KIMBERLING *v.* ROGERS.

5-1118                                    297 S. W. 2d 772

Opinion delivered January 21, 1957.

*Denver L. Dudley,* for appellant.

*Fred M. Pickens,* for appellee.

ED. F. McFADDIN, Associate Justice. This is a child custody case involving a little boy nine years of age. The litigants are the paternal grandmother, appellant, and the mother, appellee. In the decree from which comes this appeal the Chancellor awarded the custody of the little boy to the mother for the school term and to the grandmother for the vacation period; and the grandmother brings this appeal.

The custody of this little boy, Larry Kimberling, has been the cause of frequent litigation. First: in September, 1949, Junior Kimberling obtained a divorce from Wanda Kimberling and the Court gave Wanda Kimberling, the mother, the custody of Larry, then thirteen months old. Second: Wanda, being unable to properly care for Larry, persuaded the paternal grandparents, Mr. and Mrs. Mark Kimberling, to take Larry; and later, when Wanda wanted her child, the grandparents resisted. There was a *habeas corpus* proceeding (see *Kimberling* v. *Rogers,* 223 Ark. 348, 265 S. W. 2d 952);

and we affirmed the judgment of the Circuit Court, which had awarded the custody to the mother.

Third: thereupon the grandparents — Mr. and Mrs. Mark Kimberling — intervened in the original 1949 divorce suit, which had awarded the exclusive custody to the mother. In their intervention the grandparents alleged and established by evidence that in October, 1949, Wanda had left Larry with the grandparents; that he had been with them in a good, Christian home; that Junior Kimberling (the boy's father) had been in the armed forces until his death recently; that the success of Wanda's recent marriage to Mr. Rogers was yet to be determined; and that the best interests of Larry — then seven years old — would be served by leaving him with the grandparents, Mr. and Mrs. Mark Kimberling. On May 17, 1954, the Chancery Court decree awarded Larry's custody to the grandparents for the school term and to the mother, Wanda, for the vacation term.

Fourth (the present litigation): after the decree of May 17, 1954, Mr. Mark Kimberling — the grandfather— died; and thereupon, Wanda — the mother — filed the present petition, praying that she have Larry's entire custody. After a patient hearing, the Chancellor entered a decree awarding Larry's custody to Wanda, the mother, during the school term, and to Mrs. Rosie Kimberling, the grandmother, for the vacation period. This appeal is from that decree.[1]

I. *Changed Conditions.* Appellant says that the May 1954 decree should not be disturbed because there has been no change of conditions. But the death of the grandfather, Mr. Mark Kimberling, and the success of Wanda's marriage to Mr. Rogers, constitute sufficient changes in conditions to justify the Court in re-examining its former decree.

---

[1] Appellee claims that the present appeal was not taken in due time. There is no merit to such contention. Sec. 27-2106.1 Ark. Stats. (from Sec. 2 of Act 555 of 1953) says "that the notice of appeal must be filed within 30 days from the *entry* of the judgment or decree appealed from. . . ." Here the judgment was not actually filed for entry until February 28, 1956; and the notice of appeal was duly filed and given on March 24, 1956. So the notice of appeal was within 30 days from the *entry* of the judgment.

II. *The Best Interests Of The Child.* This is the polestar in these child custody cases. Appellant cites *Brown* v. *Brown,* 218 Ark. 624, 238 S. W. 2d 482, and *Griffen* v. *Newcom,* 219 Ark. 146, 240 S. W. 2d 648, as justifying a reversal of the Chancellor's decree. Appellee cites *Perkins* v. *Perkins,* 226 Ark. 765, 293 S. W. 2d 889, as justifying an affirmance of the chancery decree. Because human nature is as it is, no two child custody cases can ever be exactly the same; so the policy is to examine our other similar child custody cases and then see which one more nearly resembles the case at bar. The same Chancellor who heard the witnesses and entered the decree of May, 1954, also heard the witnesses and made the decree now attacked. Here are pertinent excerpts from his opinion at the close of the hearing from whence comes this appeal:

"This court is concerned with one thing only, that is the welfare of this little fellow in the light of those closest to him. I have seen the little fellow and I would be tickled to take him home with me and end the whole argument. Mark Kimberling, Senior, and Mrs. Kimberling, I think, have proved the right to the eternal love and respect of this little man and I think they have given him a good home, a good clean Christian home. I think they are to be highly commended. I do think they merely did what their son should have done.

"It is not easy for the Court. The entire life of this little fellow can so easily be turned one way or the other if the Court makes a mistake; and as I said, unfortunately there is no completely happy answer to a problem of this kind . . .

"I honestly believe this mother and her present husband are trying honestly and sincerely to establish a good home. Banking on that theory, but not gambling too much on the boy's part, I want to give them an opportunity to prove their sincerity bit by bit. As the counsel on both sides fully understand, the court always retains jurisdiction of a matter of this kind, and custody can be changed. I hate to divide custody, but I have seen that feeling is so high that it will be impossible for

visits to continue in the future with any satisfaction to anybody. I want this boy, if possible, to come to where he will regard his mother as his mother and have love for his mother as he should have . . ."

As aforesaid, the Chancery Court awarded the custody to the mother during the school term and to the grandmother during the vacation. It would serve no useful purpose to abstract and recite the evidence. We have reached the conclusion that the decree should be affirmed because we cannot say that the Chancellor decided against the preponderance of the evidence. His familiarity with the situation is eloquently expressed by the quoted portions of his opinion. He has power to modify the decree should circumstances so require.

Affirmed.